**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melora Hebel, | No. CV-17-002667-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Melora Hebel seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits under the Social Security Act ("the Act"). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), and have filed briefs in accordance with Local Rule of Civil Procedure 16.1. As set forth below, the Court reverses the Commissioner's decision and remands for further proceedings.

## I.     Procedural Background

On February 28, 2014, Plaintiff applied for a period of disability and disability insurance benefits under Title II the Act. (Tr. 55.)[1] Plaintiff alleged disability beginning August 8, 2013. (Tr. 15.) After the Social Security Administration ("SSA") denied Plaintiff's initial application and her request for reconsideration, she requested a hearing

---

[1]     Citations to "Tr." are to the certified administrative transcript of record. (Doc. 14.)

before an administrative law judge ("ALJ").  After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act.  (Tr. 15-25.)  This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review.  (Tr. 1-6); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.)  Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.     Administrative Record

The record before the Court establishes the following history of diagnoses and treatment related to Plaintiff's alleged impairments.  The record also includes medical opinions.  The Court discusses the relevant evidence below.

### A.     Medical Treatment Evidence

#### 1.     Treatment for Back and Hip Pain

Beginning in 2012, Plaintiff received treatment from Dr. Farhad Keikhosrow Mosallaie and other providers at the Sonoran Spine Center for back pain.  (Tr. 255-64, 289-91, 327-38, 372-409, 479-86.)  Plaintiff was also treated for hip pain.  (Tr. 372-409, 493-513.)  The Court discusses records for treatment after the August 8, 2013 alleged disability onset date.  (*See* Tr. 15.)

In August 2013, Plaintiff was in a car accident and fractured her ankle and injured her foot.  (Tr. 259.)  During a September 11, 2013 appointment with Dr. Mosallaie, Plaintiff reported that since the accident her back pain was 20% worse.  (*Id*.)  Due to recent surgery related to the car accident, Plaintiff had a cast on her right leg and used a walker.  (*Id*)  Plaintiff reported that she spent most of her time lying down in bed with her foot elevated, which had exacerbated her back pain.  (*Id*.)  On examination, Dr. Mosallaie reported that Plaintiff had tenderness throughout the thoracic spine, lumbar spine, and paraspinals.  (*Id*.)  Dr. Mosallaie prescribed Percocet and Diazepam.  (*Id*.)

On February 18, 2014, Dr. Mosallaie noted that Plaintiff was past due for her three month appointment because of insurance issues, which had been resolved.  (Tr. 257.)  At this appointment, Plaintiff reported right foot pain, fatigue, memory loss, heartburn,

anxiety, constipation, and insomnia. (Tr. 257.) On examination, Dr. Mosallaie noted a "non-antalgic gate with use of a cane," tenderness and spams at L5-S1. (*Id*.) The range of motion (ROM) in Plaintiff's lumbar spine was within normal limits (WNL). (*Id*.) On May 13, 2014, Plaintiff reported increased low back pain, mid thoracic pain, and cervical pain that increased with sitting, sleeping, bending, and walking. (Tr. 290.) Plaintiff was wearing a boot on each foot from foot surgeries in August 2013. (*Id*.) On examination, Plaintiff had an antalgic gate bilaterally, tenderness and spasm in the lumbar L4-S1 and in the right SI joint. (*Id*.) The range of motion in Plaintiff's lumbar spine was within normal limits. (*Id*.)

On July 17, 2014, Plaintiff saw Physician Assistant ("PA") Katherine Looby at the Sonoran Spine Center. (Tr. 330-32.) PA Looby reviewed a June 6, 2014 MRI of Plaintiff's lumbar spine and noted that it showed a small disc bulge at L5-S1, and mild central stenosis at L4-5 with mild right foraminal narrowing. (Tr. 331.) Plaintiff reported intense radiating lumbar pain. (Tr. 330.) Plaintiff stated that she had increased pain with sleeping, sitting, standing, bending, coughing, and sneezing. (*Id*.) On examination, PA Looby noted tenderness over the lumbar paraspinal musculature bilaterally, in the L3 region, and the right sacroiliac joint. (Tr. 331.) She also noted full and equal strength in Plaintiff's upper and lower extremities, normal muscle bulk and tone, a normal gait, and a negative straight leg raise test. (*Id*.)

On August 12, 2014, at an appointment with Dr. Mosallaie, Plaintiff stated that the physical therapy for her foot was increasing her foot pain. (Tr. 333.) Plaintiff also reported fatigue, heartburn, and insomnia. (*Id*.) On examination, Plaintiff had a limited lumbar range of motion that was within functional limits (WFL), and a non-antalgic gait without an assistive device. (*Id*.) Plaintiff also had tenderness and spasm in the thoracic mid scapular and lumbar L4-S1. *Id.* Dr. Mosallaie reduced the dosage of Percocet and continued Plaintiff on valium. (*Id*.)

On August 26, 2014, Dr. Mosallaie gave Plaintiff an injection in the sacroiliac joint. (Tr. 335.) On September 3, 2014, Plaintiff saw Jason Datta, M.D., at Sonoran

Spine Center. (Tr. 328.) Plaintiff had an earlier lumbar fusion at L3-4 and she reported that it had not relieved her back pain, and she continued to have severe pain when standing, sitting, and bending. (*Id.*) Plaintiff reported that she had a "serious fracture to her ankle" about a year ago and she had "just recovered enough to be able to walk consistently." (*Id.*) On examination, Dr. Datta reported that Plaintiff had symmetric strength and sensation in the lower extremities, and "mild decreased range of motion in the back." (*Id.*)

On February 17, 2015, Plaintiff saw Dr. Mosallaie with complaints of pain in the lumbar and right lumbosacral region, pain, numbness and burning in the right leg, neck pain, right upper scapular pain, and numbness in both hands. (Tr. 372.) On examination, Plaintiff had tenderness and spasms in the cervical, thoracic, and lumbar spine. (*Id.*) Dr. Mosallaie found that Plaintiff had a non-antalgic gait without an assistive device, a limited lumbar range of motion within functional limits, and a cervical range of motion within normal limits. (*Id.*)

On February 23, 2015, Plaintiff saw Grant Padley, D.O., and PA Mark Moyer at Orthopedic Clinic Association ("OCA") with complaints of right hip pain. (Tr. 493.) On examination, PA Moyer found tenderness to palpation on the lateral aspect of the hip, positive external hip snapping with standing and with rotating the hip, and a limited range of motion in the right hip. (*Id.*)

On March 16, 2015, Plaintiff saw Michael Fairfax, D.O., for joint pain. (Tr. 422.) Plaintiff reported diffuse musculoskeletal pain, multiple areas of joint swelling, nonrestorative sleep and fatigue. (*Id.*) On examination, Dr. Fairfax noted "scattered areas of tenderness with light palpation over major muscle and tendon groups," and lumbar spine tenderness. (*Id.*)

On June 1, 2015, Plaintiff saw PA Moyer. (Tr. 503-05.) PA Moyer noted that a May 13, 2015 MRI of Plaintiff's right hip showed edema, right paralabral cysts, a mild strain of the right gluteus medius muscle at its trochanteric insertion, and bursitis.

1    (Tr. 503-05, 434-35.)  PA Moyer administered a steroid injection in Plaintiff's right hip.

2    (Tr. 503.)

3    **B.    Treatment for Ankle Injury and Pain**

4    As previously noted, Plaintiff was in a car accident on August 8, 2013 and

5    sustained a right pilon fracture and a right distal fibula fracture in her right ankle.

6    (Tr. 231, 244-45, 250.)  On August 9, 2013, Plaintiff had surgery which involved a closed

7    reduction of the right pilon fracture with a right distal fibula fracture and application of

8    an external fixator on the right ankle and leg.  (Tr. 235.)  On August 27, 2013, Plaintiff

9    had a second surgery that included removal of the external fixator and "plating of [the]

10   tibia and fibula for a tibiofibular fracture."  (Tr. 271.)

11   On November 22, 2013 Plaintiff saw Vu Nguyen, D.P.M., for a post-operative

12   appointment.[2]  (Tr. 309.)  Plaintiff complained of pain in the right side of her calf and the

13   inner side of her right ankle.  (Tr. 309.)  Plaintiff reported that she had been on her feet a

14   lot and had increased pain.  (*Id*.)  Plaintiff stated that her foot hurt when she did not

15   elevate it.  (*Id*.)  On examination, Dr. Nguyen found moderate right ankle pain with

16   palpation and with range of motion.  (*Id*.)

17   On December 13, 2013, Dr. Nguyen examined Plaintiff and noted that she had

18   been full weight bearing with a boot.  (Tr. 307.)  Plaintiff reported pain on the medial

19   right ankle and pain over the "screw prominence over the lateral ankle."  (*Id*.)  Plaintiff

20   reported that physical therapy had helped.  (*Id*.)  On examination, Dr. Nguyen found that

21   Plaintiff had mild right ankle pain with palpation and range of motion, but "a lot less than

22   [at her] last visit."  (*Id*.)  Additionally, the range of motion in Plaintiff's right ankle had

23   improved since her last appointment.  (*Id*.)

24   On January 31, 2014, Plaintiff reported limited mobility in her right ankle and a

25   popping sound when tried to rotate it.  (Tr. 303.)  Plaintiff stated that she stopped going to

26   physical therapy after her therapist left the practice, but she had continued her exercises

27   at home, used an ankle sleeve, and started using a bone stimulator.  (*Id*.)  Dr. Nguyen

28   

[2]  Unless otherwise noted, Dr. Nguyen treated Plaintiff's ankle injury and pain.

noted that Plaintiff had been full weight-bearing in regular shoes since her last visit. (*Id*.) She had been using an ankle sleeve regularly and going to physical therapy. (*Id*.) On examination, Plaintiff had mild pain with palpation and pain with range of motion, but "a lot less than before." (*Id*.) Plaintiff also had an improved range of motion in her ankle. (*Id*.) Dr. Nguyen directed Plaintiff to use the ankle sleeve and the bone stimulator, wear tennis shoes, continue physical therapy, and avoid carrying heavy objects. (Tr. 304.)

On March 14, 2014, Plaintiff saw Dr. Nguyen for a "delay union of the proximal [right] distal tibia fracture." (Tr. 301.) Plaintiff stated that she used her old CAM (controlled ankle motion) boot for a day and had no pain at the "non-union site." (*Id*.) Plaintiff wanted a new boot so she could walk more. (*Id*.) Plaintiff reported that she had been using the ankle sleeve with tennis shoes, but the non-union site was painful. (*Id*.) Plaintiff was still going to physical therapy. (*Id*.) Plaintiff complained of popping and pain on the medial and lateral sides of the ankle. (*Id*.) An x-ray of the right ankle showed "increased in bone callus formation at the distal tibia fracture site [and] fracture gapping." (*Id*.) The x-ray also showed mild degenerative joint disease of the right ankle. (*Id*.) On examination Plaintiff had "great ROM of the [right] ankle without pain," mild pain over the distal tibia with palpation, no "valgus or varus of the [right] ankle and the [right] leg [was] still straight." (*Id*.) Dr. Nguyen gave Plaintiff a new CAM boot to allow ambulation and to provide support to the "delay union site." (Tr. 302.)

On April 11, 2014, Plaintiff complained of severe pain in her right ankle and the bottom of her hallux toe. (Tr. 299.) Plaintiff reported pain after she increased her walking and carried her grandson. (*Id*.) Plaintiff also complained of increased pain in her left bunion. (*Id*.) On examination, Dr. Nguyen noted pain to palpation over the medial and lateral ankle gutters, and left bunion with pain to palpation. (*Id*.) Dr. Nguyen administered a cortisone injection in Plaintiff's right ankle for pain, and discussed surgery for Plaintiff's left bunion, surgery to remove Plaintiff's right ankle hardware, and arthroscopy for pain. (Tr. 300.)

On May 1, 2014, Plaintiff had right ankle surgery, which included an arthroscopy with partial synovectomy, removal of the internal fixation device, right distal fibular exostectomy and a left bunionectomy. (Tr. 276.) Plaintiff's postoperative diagnosis was right ankle anterior impingement syndrome with synovitis, painful internal fixation device in the right ankle, and painful left bunion. (*Id*.) Dr. Nguyen found severe fibrotic chronic synovitis in the anterior, medial, and lateral ankle gutters with arthritic changes noted in the medial and lateral talar dome. (*Id*.) He also noted that the distal fibular fracture was healing well. (Tr. 277.) Dr. Nguyen advised Plaintiff to perform weight bearing activity as tolerated with the CAM boot, and to "ice[] and elevat[e] both feet when not mobile." (*Id*.)

On May 19, 2014, Plaintiff reported that she was doing well but still had pain, right ankle weakness, and left foot soreness. (Tr. 293.) An x-ray of Plaintiff's right ankle showed mild degenerative joint disease. (*Id*.) On examination, Plaintiff had mild pain to palpation over the left bunionectomy, mild to moderate pain with palpation over the lateral right ankle gutter, mild pain with right ankle range of motion, and limited right ankle range of motion. (Tr. 293.)

On November 16, 2014, Plaintiff reported to urgent care after trying to lift a fan and injuring her left ankle. (Tr. 404.) Plaintiff stated that her left ankle buckled, twisted, and was moderately swollen with limited mobility. (*Id*.) Plaintiff was diagnosed with a sprained ankle. (Tr. 406.)

Plaintiff saw Dr. Nguyen on February 9, 2016. (Tr. 515.) He noted that he last saw Plaintiff in April 2015. (*Id*.) Plaintiff reported bilateral ankle pain that was greater on the right. (*Id*.) She stated that on some days her right ankle would lock and she had to force it to move. (*Id*.) Plaintiff reported that she also had pain in her back and hip, which required Percocet. (*Id*.) Plaintiff stated that she could not walk long distances because of the pain. (*Id*.) She said that cortisone injections in the past had helped reduce her pain for two to three months. (*Id*.) On examination, Plaintiff had pain with palpation over the medial, anterior, and lateral bilateral ankle joints, with more pain in the right ankle.

(Tr. 516.)  Plaintiff had pain on range of motion of her ankles, but had an adequate range of motion.  (*Id*.)  An x-ray of Plaintiff's right ankle revealed that the arthritis in Plaintiff's left ankle had gotten worse with narrowing joint space.  (*Id*.)  Dr. Nguyen told Plaintiff that she might need fusion of the right ankle in the future.  (*Id*.)  Dr. Nguyen gave Plaintiff a cortisone injection in her right ankle.  (*Id*.)  He "[r]ecommended icing, taking ibuprofen, [and] wearing ankle braces for both of her ankles now."  (*Id*.)  He also advised Plaintiff to wear tennis shoes and not to wear flip flops or go barefoot.  (*Id*.)  Plaintiff was directed to avoid high-impact activities and to return for a follow up in four weeks.  (*Id*.)

### C.    Opinion Evidence

On March 3, 2016, Dr. Nguyen wrote a letter "to whom it may concern," in which he stated that due to "post traumatic arthritis" and pain in her right ankle, Plaintiff could not perform her "normal work duty."  (Tr. 514.)  He opined that Plaintiff could not walk or stand more than four hours in an eight-hour work day, and that she could not push or pull more than twenty pounds.  (*Id*.)

On March 15, 2016, Dr. Nguyen wrote another letter "to whom it may concern."  (Tr. 588.)  He assessed the same walking, standing, pushing and pulling limitations.  (*Id*.)  He added that Plaintiff "need[ed] to elevate her feet regularly for swelling reduction."  (*Id*.)  He also stated that Plaintiff needed to "ic[e] regularly since it help[ed] with ankle pain."  (*Id*.)  Dr. Nguyen added that "this has been recommended as a regular treatment since [Plaintiff's] accident in 2013."  (*Id*.)  He again opined that Plaintiff had limited use of her right ankle and that she could not perform her "normal work duty that she was able to do in the past" due to her pain.  (*Id*.)

### III.    The Administrative Hearing

Plaintiff was in her early forties at her disability onset date.  (Tr. 110.)  She had the equivalent of a high school education and had completed some veterinary technician school.  (Tr. 48.)  Plaintiff had past relevant work as a real estate sales agent and a veterinary technician.  (Tr. 49-51.)

At the administrative hearing, Plaintiff testified that she was in a car accident in August 2013 in which she injured her right ankle. (Tr. 34.) Plaintiff testified that her injuries caused difficulty standing, walking, and "kind of sitting." (*Id*.) She stated that it was difficult for her to do "anything . . . for more than 15 minutes at a time." (*Id*.) Plaintiff testified that she had surgery on her right ankle three times and anticipated additional surgery. (Tr. at 35.) Plaintiff stated that she elevated and iced her right ankle three-to-five times throughout the day while in bed with pillows under her ankle. (Tr. 37.) Plaintiff testified that she elevated her leg for circulation and swelling on the recommendation of her doctor. (Tr. 38.) Plaintiff testified that she had stretched ligaments in her left ankle and sprained it regularly. (Tr. 35.)

Plaintiff also testified that she had hip pain and that Dr. Padley had recommended hip surgery. (*Id*.) Plaintiff stated that she had constant hip and ankle pain that was aggravated by engaging in any activity for more than fifteen minutes at one time. Plaintiff testified that she could not walk for fifteen minutes without taking a break because she experienced pain in her ankles and hip after eight-to-ten minutes of walking. (Tr. 39.) Plaintiff testified that she could not sit in a "regular business style chair" for more than fifteen minutes due to restless legs. (Tr. 40.) Plaintiff stated that she could not lift more than fifteen pounds without pain. (*Id*.) Plaintiff further stated that she could not stoop, bend, or squat without additional support. (*Id*.)

Plaintiff testified that she took Oxycontin, Diazepam, Nexium, and Miralax. (Tr. 41.) She reported that these medications caused heartburn, constipation, mental fog, drowsiness, nausea, and dry mouth. (Tr. 41-42.) Plaintiff stated that she typically slept about two hours at night and napped during the day. (Tr. 42.) Plaintiff usually ordered groceries online and picked them up at the store. (Tr. 43.) Plaintiff testified that she had tried to work, but her pain distracted her from completing any tasks. (Tr. 46.) Plaintiff testified that she lived with her husband and her son and that she did the housework "in a very long, drawn out, sporadic way." (Tr. 42-43.)

A vocational expert also testified at the administrative hearing.  She testified that an individual with the residual functional capacity (RFC) assessed by the ALJ could not perform Plaintiff's past work, but could perform other work that existed in significant numbers in the national economy.  (Tr. 51-52.)  She testified that a person who had to elevate her legs above her heart while sitting would be unable to sustain employment.  (Tr. 52-53.)  She also testified that a person who would be off task more than ten percent of the day would be unable to work.  (Tr. 53.)

## IV.    The ALJ's Decision

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits).  To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

### A.    The Five-Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that she is not presently engaged in a substantial gainful activity, and (2) that her medically determinable impairment or combinations of impairments is severe.  20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c).  If a claimant meets steps one and two, there are two ways in which she may be found disabled at steps three through five.  At step three, she may prove that her impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d).  If so, the claimant is presumptively disabled.  If not, the ALJ determines the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).    At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past relevant work.    20

C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant numbers in the national economy, considering the claimant's RFC, age, work experience, and education.   20 C.F.R. §§ 404.1520(g), 416.920(g).  If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B.     The ALJ's Application of the Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, August 8, 2013.  (Tr. 17.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "spinal fusion surgery of the L3-L4, spondylosis, history of right ankle fractures, right hip bilateral adenexal cysts, and reconstructive surgery of a weight bearing joint (20 C.F.R. § 404.1520(c))."  (*Id*.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (Tr. 18.)

The ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b)."  (*Id*.)  The ALJ clarified that Plaintiff must be able to "change from sitting to standing every twenty minutes."  (*Id*.)  Additionally, Plaintiff must avoid climbing ladders, ropes, or scaffolds.  (*Id*.)  Plaintiff could occasionally climb ramps and stairs, kneel, and crawl.  (*Id*.)  Plaintiff could frequently balance, stoop, and crouch.  (*Id*.)  The ALJ further found that Plaintiff must avoid exposure to moving machinery and unprotected heights.  (*Id*.)

The ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 23.)  The ALJ further concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other work that existed in significant numbers in the national economy.  (*Id*.)  Therefore, the ALJ concluded that Plaintiff had not been under a disability as defined in the Act from August 8, 2013 through the date of

the ALJ's decision. (Tr. 24.) The ALJ denied Plaintiff's application for disability and disability insurance benefits. (*Id.*)

**V.  Standard of Review**

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).  The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

**VI.  Plaintiff's Claims**

Plaintiff raises the following claims: (1) the ALJ erred by failing to consider whether Plaintiff had an impairment that met or equaled Listings 1.02 and 1.03; (2) the

ALJ erred by rejecting, in part, Dr. Nguyen's opinions; and (3) the ALJ erred by finding Plaintiff only partially credible.  (Doc. 15 at 2.)  The Commissioner asserts that the ALJ's decision is free from harmful error and is supported by substantial evidence.  (Doc. 20.)  As set forth below, the Court finds that the ALJ erred in failing to appropriately consider whether Plaintiff had a listed impairment, assigning only partial credit to Dr. Nguyen's opinions, and rejecting Plaintiff's symptom testimony.

### A.    The ALJ Erred at Step Three

Plaintiff asserts that the ALJ erred at step three of the sequential evaluation process by failing to consider whether Plaintiff's ankle impairment met or equaled Listings 1.02 or 1.03.  (Doc. 15 at 11-14.)  The Commissioner disputes this assertion.  (Doc. 20 at 3-5.)

### 1.    Standard for Determining a Listed Impairment

At step three of the sequential evaluation process, the ALJ determines if a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listing of Impairments.  *See* 20 C.F.R. § 404.1520(d).  If a claimant shows that her impairment or combination of impairments meets or equals a listed impairment, she will be found presumptively disabled.  *See* 20 C.F.R. §§ 416.925-416.926.  An impairment meets a listed impairment if it satisfies all of the criteria of that listed impairment.  *See Sullivan Zebley*, 493 U.S. 521, 530 (1990); *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment.  *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

"Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing."  *Cunningham v. Astrue*, 2011 WL 5103760, at *3 (C.D. Cal.  Oct. 27, 2011) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176

(9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). Remand for further proceedings is appropriate when "an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case." *Cunningham*, 2011 WL 5103760, at *3 (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (stating that a plaintiff must present a plausible theory as to how an impairment or combination of impairments equals a listed impairment)). Plaintiff argues that she meets or equals Listing 1.02 or 1.03 based on the unsuccessful surgeries to her right ankle, and the limitations that Dr. Nguyen imposed two years after her surgeries. (Doc. 15 at 11-13, Doc. 21 at 1-2.)

To meet Listing 1.02, "[m]ajor dysfunction of a joint(s)," Plaintiff must show "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) . . .[w]ith . . .[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." Listing 1.02, 20 C.F.R., Pt. 404, Subpt. P, App. 1. To meeting Listing 1.03, Plaintiff must establish "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."[3] Listing 1.03, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.03. Thus, to meet either Listing 1.02 or 1.03, Plaintiff must establish an inability to ambulate effectively.

The definition of the inability to ambulate effectively in § 1.00B2b "means an extreme limitation to walk" and "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at

---

[3] The ALJ found that Plaintiff's severe impairments included the "reconstructive surgery of a weight bearing joint (20 C.F.R. § 404.1520(c))." (Tr. 17.)

1.00B2b(1). "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* at 1.00B2b(2).

## 2.    The ALJ's Conclusory Findings Were Insufficient

The Court concludes that the ALJ erred at Step Three and that remand is appropriate on that basis. The record includes evidence that Listing 1.03 plausibly applies to Plaintiff's case. *See Lewis*, 236 F.3d at 514. The ALJ found that Plaintiff's severe impairments included the "reconstructive surgery of a weight bearing joint (20 C.F.R. § 404.1520(c))." (Tr. 17.) Additionally, Plaintiff's reported symptoms plausibly suggest that she could not ambulate effectively. (Tr. 39 (stating that Plaintiff could walk about eight to ten minutes before needing a break); Tr. 195 (stating that Plaintiff could not walk more than one-half a block).)

The Commissioner argues that Plaintiff does not have a plausible theory as to how her ankle impairment meets Listing 1.03 because neither of the state agency reviewing physicians opined that Plaintiff met or equaled a listing level of impairment. (Doc. 20 At 4-5 (citing Tr. 60, 63, 72, 75).) The Commissioner relies on Dr. Nguyen's opinion that Plaintiff could walk or stand for up to four hours in an eight-hour day. (Doc. 20 at 5.) The Commissioner further relies on Dr. Datta's September 2014 treatment note indicating that Plaintiff recovered after surgery and could walk consistently. (Tr. 328.) The Commissioner's reliance on this evidence is not helpful. The ALJ could have determined that, based on the opinions of the state agency physicians, Dr. Nguyen's opinions, and Dr. Datta's treatment notes, Plaintiff's impairments did not satisfy the criteria of Listing 1.03. The ALJ, however, did not make that statement in his decision. (Tr. 18.) The ALJ did not discuss, or even cite, Listing 1.03 in his step three analysis. (*Id.*) This Court's

review is limited to the reasons cited by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ made a conclusory statement that Plaintiff "[had] no impairment, which meets the criteria of any of the listed impairments . . . " (Tr. 18), but did not consider any specific listing and did not explain why Plaintiff's impairments, in particular her "reconstructive surgery of a weight bearing joint" (Tr. 17), did not satisfy a listing. The ALJS's conclusory finding is insufficient to support the ALJ's implicit finding at step three that Plaintiff's impairments did not meet or medically equal Listing 1.03.[4]  *See Lewis*, 236 F.3d at 512 ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.").

**B.     The ALJ Erred in Weighing Dr. Nguyen's Opinions**

Plaintiff argues that the ALJ erred by giving partial weight to treating physician Dr. Nguyen's opinions.  (Doc. 15 at 14.)  As discussed below, the Court agrees.

**1.     Weight Assigned to Medical Source Opinions**

In weighing medical source evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is given to a treating physician's opinion.  *Id.*  The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion.  *Id.*; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that

---

[4]  Because the Court has found that the ALJ erred at step three in connection to Listing 1.03, and that remand is appropriate on that basis, it does not consider whether the ALJ erred by failing to consider Listing 1.02.

are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than opinions from treating or examining physicians. *Lester*, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631.

### 2.    Weight Assigned to Dr. Nguyen's Opinions

In March 2016, Dr. Nguyen opined that due to "post traumatic arthritis" and pain in her right ankle, Plaintiff could not walk or stand more than four hours in an eight-hour work day and that she could not push or pull more than twenty pounds. (Tr. 514, 588.) He also stated that Plaintiff "need[ed] to elevate her feet regularly for swelling reduction." (Tr. 588.) Dr. Nguyen further found that Plaintiff needed to "ic[e] regularly since it help[ed] with ankle pain." (*Id.*) Dr. Nguyen added that "this has been recommended as a regular treatment since [Plaintiff's] accident in 2013." (*Id.*) Dr. Nguyen also noted that Plaintiff's right ankle may require future surgery or a replacement. (*Id.*)

The ALJ assigned Dr. Nguyen's opinions "partial weight" because he concluded that they were not supported by the "totality of the medical record," or by Plaintiff's activities, and because they were "limited in scope and did not fully consider all of the claimant's limitations." (*Id.*)

### a. Medical Record Support for Opinions

The ALJ rejected Dr. Nguyen's opinions because he believed that the limitations assessed were not supported by "the totality of the medical record." (Tr. 21-22.) The ALJ generally referred to the limitations Dr. Nguyen assessed, but the ALJ did not cite to the medical evidence that detracted from Dr. Nguyen's assessment of those limitations. (*Id*.) The ALJ's conclusory assertion that the limitations Dr. Nguyen assessed were not supported by the medical record does not satisfy the standard required for rejecting a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527, 416.927; *Reddick*, 157 F.3d at 725 (explaining that an ALJ provides "specific and legitimate" reasons for rejecting a contradicted opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); *Swanson v. Sec'y of Health and Human Servs*, 763 F.2d 1061, 1065 (9th Cir. 1985) (same). The ALJ must do more than offer his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006). The ALJ did not satisfy this burden in concluding, without explanation, that Dr. Nguyen's opinions were not supported by "the totality of the medical record." (Tr. 21-22.)

### b. Inconsistent with Plaintiff's Activities

The ALJ also found that Dr. Nguyen's opinions were inconsistent with Plaintiff's activities including caring for pets, doing laundry, cleaning, performing physical therapy, caring for her family, making dinner, and doing dishes. (*Id*.) The ALJ further noted that Plaintiff shopped weekly for three to four hours at a time. (*Id*.)

The ALJ mentioned Plaintiff's activities (Tr. 22), but he did not identify any particular limitation that Dr. Nguyen assessed and explain how that limitation was inconsistent with any particular activity. (*Id*.) The ALJ noted that Plaintiff shopped weekly for three to four hours, but did not indicate which part of Dr. Nguyen's opinions were inconsistent with that activity. (*Id*.) Additionally, Plaintiff's ability to shop for that

amount of time is consistent with Dr. Nguyen's opinion that Plaintiff could stand or walk up to four hours in an eight hour day. The ALJ's conclusory assertion that the limitations Dr. Nguyen assessed were inconsistent with Plaintiff's activities does not satisfy the standard required for rejecting a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527, 416.927; *Reddick*, 157 F.3d at 725; *Swanson,* 763 F.2d at 1065. The ALJ must do more than offer his conclusions. *Embrey*, 849 F.2d at 421-22); *see also Widmark,* 454 F.3d at 1069. The ALJ did not satisfy this burden in concluding, without explanation, that Dr. Nguyen's opinions were not supported by Plaintiff's activities. (Tr. 22.)

### c.    Limited in Scope

The ALJ also discounted Dr. Nguyen's opinions because they were "limited in scope and did not fully consider all of [Plaintiff's] impairments." (*Id*.) The ALJ did not explain what he meant by "limited in scope." (*Id*.) The Commissioner interprets "limited in scope" to mean that Dr. Nguyen did not offer opinions on whether Plaintiff had postural or environmental limitations. (Doc. 20 at 7.) However, the Commissioner does not explain why the absence of any opinions on postural and environmental limitations supports the ALJ's decision to assign partial weight to the functional limitations Dr. Nguyen assessed. (*Id*.)

Dr. Nguyen treated Plaintiff for her ankle issues and stated that his opinions were based on "post traumatic arthritis" and pain in Plaintiff's right ankle. (Tr. 514, 588.) The ALJ accurately noted that Dr. Nguyen did not appear to consider Plaintiff's other impairments, including back and hip issues (*see* Tr. 17), when he opined on Plaintiff's limitations. However, the ALJ did not explain how Dr. Nguyen's failure to consider Plaintiff's other impairments detracted from the functional limitations that Dr. Nguyen assessed based on his history of treating Plaintiff for issues related to her ankles. The Court concludes that this rationale is not a legally sufficient reason for discounting Dr. Nguyen's opinions.

## C.    Plaintiff's Symptom Testimony

Plaintiff also asserts that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective complaints.  (Doc 15 at 17.)  The Commissioner defends the ALJ's assessment of Plaintiff's symptom testimony.  (Doc. 20 at 8-11.)  As discussed below, the Court finds that the ALJ erred by rejecting Plaintiff's symptom testimony without providing clear and convincing reasons for doing so.

An ALJ uses a two-step analysis to evaluate a claimant's subjective symptom testimony.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom.  *Smolen*, 80 F.3d at 1282.  Instead, the claimant must only show that an objectively verifiable impairment "can reasonably produce the degree of symptom alleged."  *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d at 1160–61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms limit the claimant's ability to work.[5]  *See* 20 C.F.R. § 404.1529(c)(1).  At this

---

[5]  After Plaintiff filed her claim, in 2016, the Agency issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) (SSR 16-3p) (effective March 16, 2016), which provides new guidance for ALJs when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms.  SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) (SSR 96-7p).  SSR 16-3p eliminates the term "credibility" used in SSR 96-7p to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR

second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for discounting the symptom testimony. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "This is not an easy requirement to meet: '[t]he clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting her symptom testimony. (Doc. 15 at 17.) As set forth below, the Court concludes that the ALJ erred by discounting this testimony.[6]

Plaintiff testified that she had constant pain when she sat, stood or walked more than fifteen minutes at a time. (Tr. 19.) Plaintiff stated that she could walk half a block, but needed to stop and rest for fifteen minutes before she resumed walking. (*Id.*) Plaintiff testified that she could lift up to fifteen pounds. (*Id.*) The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 20.) As discussed below, the ALJ gave several reasons for rejecting Plaintiff's symptom testimony. (Tr. 19-20.)

---

16-3p, 2016 WL 1119029, at *1. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). The parties do not discuss whether the ALJ followed this ruling, thus, the Court does not consider it an issue in this case.

[6] The Commissioner objects to the clear and convincing standard, but recognizes that the Ninth Circuit continues to apply this standard. (Doc. 20 at 9 n.1.)

### 1. Inconsistencies with Medical Record

The ALJ discounted Plaintiff's symptom testimony because he found that "[t]he medical record demonstrated inconsistencies with the claimant's allegations." (Tr. 19.) The ALJ specifically found that some objective medical evidence with mild or normal findings did not support her allegations of back and hip pain. (Tr. 19-20.) However, once a claimant produces objective medical evidence of an underlying impairment, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, it is a relevant factor in determining the severity of a claimant's symptoms. *Rollins v. Massanri*, 261 F.3d 853, 857 (9th Cir. 2001). Therefore, although the ALJ could consider the lack of medical evidence corroborating Plaintiff's symptom testimony in determining the severity of her symptoms, he could not base his opinion solely on that lack of evidence.

### 2. Plaintiff's Activities

An ALJ may reject a claimant's symptom testimony if the severity of the alleged symptoms is incompatible with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Daily activities may also be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ noted that Plaintiff participated in a yard sale in 2010, before the disability onset date, during which she had "moved boxes and everything else." (Tr. 21.)

The ALJ speculated that Plaintiff engaged in similar activities, moving boxes and other things, during yard sales in November 2014 and April 2015. (*Id.*)  The ALJ concluded that Plaintiff's participation in two yard sales was inconsistent with her allegations of "disabling limitations with exertional and non-exertional limitations." (*Id.*)  The ALJ did not explain how Plaintiff's participation in two yard sales over a six month period was inconsistent with her subjective complaints.  Additionally, the record reflects that when Plaintiff attempted to move a fan during the November 2014 yard sale, she injured both of her ankles. (Tr. 520.)  The Court concludes that substantial evidence does not support the ALJ's conclusion that Plaintiff's subjective complaints were inconsistent with her participation in two yard sales.

The ALJ also found that Plaintiff's participation in activities, including caring for pets, doing laundry, cleaning, performing physical therapy, caring for her family, making dinner, and doing the dishes, was inconsistent with "the extent of her alleged allegations." (Tr. 21.)  However, the ALJ did not identify the particular symptom testimony that was inconsistent with Plaintiff's activities. (*Id.*); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) )(stating that to ensure meaningful review, the ALJ must specifically identify the claimant's testimony the ALJ finds not to be credible and explain what evidence undermines the testimony).

As the ALJ noted, the record reflects that Plaintiff spent two hours a day doing laundry, two hours cleaning, and one hour caring for pets. (Tr. 19 (citing Admin. Hrg. Ex. 7E at 4).)  The record also reflects that Plaintiff took frequent rest breaks while doing those chores. (Tr. 197 (stating that Plaintiff took twenty to thirty minute rest breaks after her chores).)  "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)) (finding "only a scintilla of evidence in the record to support the ALJ's finding that [the claimant] lacked

credibility about her pain" when the claimant was able "to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, . . . read . . . and exercise at home."). Accordingly, Plaintiff's daily activities were an insufficient basis to discredit her symptom testimony.

### 3. No Apparent or Acute Distress

The ALJ stated that Plaintiff reported constant pain at a level six. (Tr. 21.) The ALJ discounted that testimony because treating and examining sources observed that Plaintiff was in "no apparent or [no] acute distress." (*Id*.) The ALJ concluded that it was "reasonable to expect" that the medical sources would "observe a similar level of discomfort . . . ." (*Id*.) This rationale has been rejected. *See Ekola v. Colvin*, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014). In *Ekola*, the ALJ discounted the claimant's symptom testimony based on the treating physicians' consistent observations that the claimant appeared "healthy and in no acute distress." *Id*. at *6. The court found that such a reason was insufficient to reject a claimant's symptom testimony. *Id*. The court noted that "in a medical context 'acute' means 'having a rapid onset, severe symptoms, and a short course; not chronic.'" *Id*. (quoting *Taber's Cyclopedic Medical Dictionary* A–32 (13th ed. 1977)). The court stated that the plaintiff's conditions were chronic, not acute. *Ekola*, 2014 WL 4425783, at *6.

In this case, Plaintiff reported constant pain at a level 6. The ALJ does not explain how a constant level of pain is inconsistent with findings that Plaintiff was not in acute or apparent distress during certain appointments with medical providers. Thus, the Court concludes that the medical examination findings that Plaintiff was not in acute or apparent distress are not a legally sufficient ground for discounting Plaintiff's symptom testimony regarding the severity of her constant pain.

### 4. No Evidence of Fatigue

Finally, the ALJ rejected Plaintiff's reports of fatigue because the medical record was "negative for fatigue." (Tr. 21.) Plaintiff asserts that the ALJ misread the record regarding her reports of fatigue. (Doc. 15 at 20.) The Commissioner does not dispute

this assertion and does not defend the ALJ's rationale for rejecting Plaintiff's complaints of fatigue. (Doc. 20 at 11.) Therefore, as set forth above, the ALJ did not provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

**VII.    Conclusion and Remedy**

The Court concludes that the ALJ erred at step three of the sequential evaluation process and by rejecting Dr. Nguyen's opinions and Plaintiff's symptom testimony. Therefore, the Court reverses the Commissioner's decision and has the discretion to remand the case for further proceedings or for an award benefits. *See Reddick*, 157 F.3d at 728. When no useful purpose would be served by further administrative proceedings, or when the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

However, when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*; *see Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (stating that evidence should be credited as true and an action remanded for an immediate award of benefits when each of the following factors are present: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant's testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.").

As discussed above in Section VI.A, the ALJ erred at step three. Because of that error, further proceedings are necessary for the ALJ to consider whether Plaintiff's ankle impairment meets or equals Listing 1.03. The ALJ also erred in rejecting Dr. Nguyen's opinions and Plaintiff's symptom testimony. However, from the record before the Court,

the Court cannot determine whether, if Dr. Nguyen's opinions and Plaintiff's symptom testimony were credited as true, the ALJ would be required to find Plaintiff disabled.

Dr. Nguyen opined that Plaintiff needed to ice "regularly" and to elevate her feet "regularly" to help with pain and swelling. (Tr. 588.) Dr. Nguyen did not define "regularly" and did not specify the duration or frequency with which Plaintiff should ice and elevate her feet. At the administrative hearing, Plaintiff testified that she lay in bed and iced and elevated her right ankle by placing pillows under her right ankle three to five times a day. (Tr. 38.) During the administrative hearing Plaintiff testified that "Dr. Melendez" had advised her to do so since August 2013. (*Id.*) However, Plaintiff's briefing before this Court, does not refer to any treatment records or opinions by Dr. Melendez. Assuming that Plaintiff may have meant to refer to Dr. Nguyen, Dr. Nguyen's opinions do not state that Plaintiff was required to ice and elevate her feet three to five times a day. While Dr. Nguyen's opinions and Plaintiff's testimony are consistent with regard to a general need for Plaintiff to ice and elevate her feet, they do not include the same frequency and durational requirements.

At the administrative hearing, the vocational expert testified that if an individual had to "elevate [her] legs while sitting above the waist level" work would be precluded.[7] (Tr. 53.) The vocational expert's testimony appears to assume that the individual's legs would be elevated the entire time that the individual was sitting. Neither Dr. Nguyen's opinions nor Plaintiff's testimony includes that particular requirement. Therefore, even if Dr. Nguyen's opinions and Plaintiff's symptom testimony were credited as true, on the record before the Court, it is not clear that the ALJ would be required to find Plaintiff disabled. Therefore, the credit-as-true rule is not satisfied. Considering the lack of clarity in the record, further proceedings would be beneficial to clarify (1) Dr. Nguyen's

---

[7] The vocational expert also testified that an individual who would miss more than two to three days of work per month, or who was off task more than ten percent of the work day, could not sustain work. (Tr. 53.) Dr. Nguyen's opinions do not include these limitations. (Tr. 514, 588.) Additionally, although Plaintiff testified about experiencing "fogginess [and] drowsiness," and about having "some" issues concentrating, she did not testify as to particular limitations upon which the vocational expert's testimony was based. (Tr. 40-46.)

opinion as to how frequently during an eight-hour work day, and for how long, Plaintiff needs to ice and elevate her feet, and (2) the vocational expert's testimony about how that icing/elevating requirement would impact the availability of work. Additionally, the ALJ did not consider whether work would be available to Plaintiff with the four-hour walking/standing limitation that Dr. Nguyen assessed. Therefore, the Court remands for further proceedings.

In conclusion, the Court remands for further proceedings to consider whether Plaintiff's impairment or combination of impairments meets or equals Listing 1.03, to clarify Dr. Nguyen's opinion regarding the need for Plaintiff to ice and elevate her feet, and to clarify how that icing/elevating requirement would impact the availability of work. The ALJ should consider whether work would be available for Plaintiff considering Dr Nguyen's opinion that Plaintiff could not stand or walk for more than four hours in an eight-hour day, and the ALJ may consider whether Plaintiff's impairments meet or equal Listing 1.02.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **REVERSED** and this matter is remanded for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and terminate this case.

Dated this 3rd day of July, 2018.


_____
Bridget S. Bade
United States Magistrate Judge

- 27 -